(No. 76481. )

# GILBERT'S ETHAN ALLEN GALLERY, Appellant, v. ETHAN ALLEN, INC., et al., Appellees.

*Opinion filed September 29, 1994.*

Roy C. Dripps, of the Lakin Law Firm, P.C., of Wood River, for appellant.

Dennis E. Rose, of Donovan, Rose, Nester & Szewczyk, P.C., of Belleville, for appellee Ethan Allen, Inc.

JUSTICE MILLER delivered the opinion of the court:

Defendant Ethan Allen, Inc. (Ethan Allen), is a manufacturer and distributor of furniture. Defendant Bly & Sons, Inc. (Bly & Sons), and plaintiff Gilbert's Ethan Allen Gallery are furniture dealers.

Plaintiff filed a complaint in the circuit court of Madison County alleging that defendants violated the Illinois Antitrust Act (the Illinois Act) (Ill. Rev. Stat. 1985, ch. 38, par. 60—1 *et seq.*). The trial court entered judgment against plaintiff and in favor of Bly & Sons. The trial court, however, found that Ethan Allen had violated section 3(3) of the Illinois Act (Ill. Rev. Stat. 1985, ch. 38, par. 60—3(3)), and entered judgment in favor of plaintiff and against Ethan Allen in the sum of $492,000, plus costs.

Ethan Allen filed a timely notice of appeal. Plaintiff cross-appealed the trial court's judgment in favor of Bly & Sons. Plaintiff further claimed on appeal that the trial court erred in failing to award it attorney fees. The appellate court affirmed the trial court's judgment in favor of Bly & Sons, but reversed the trial court's judgment against Ethan Allen, Inc. (251 Ill. App. 3d 17.) The appellate court did not address the question whether the trial court should have awarded plaintiff attorney fees. We granted plaintiff's petition for leave to appeal to this court. 145 Ill. 2d R. 315.

# FACTS

Defendant Ethan Allen distributes its furniture solely through the use of authorized dealers. From 1956 to 1985, plaintiff was an authorized Ethan Allen dealer. Plaintiff operated a store in Alton, Illinois, and advertised throughout the metropolitan St. Louis area. Defendant Bly & Sons operated two Ethan Allen stores, one in Fairview Heights, Illinois, and one in Chesterfield, Missouri. Bly & Sons also advertised throughout the metropolitan St. Louis area. Plaintiff and Bly & Sons competed against each other.

Ethan Allen publishes suggested retail prices for its furniture. Plaintiff alleges that there is an unspoken rule that dealers are not to deviate from these prices. Plaintiff periodically sold Ethan Allen furniture at a discount.

Lewis Gilbert, plaintiff's owner, testified that Nathan Ancell, Ethan Allen's chairman of the board, repeatedly complained about plaintiff's practice of discounting Ethan Allen furniture. In 1985, Ethan Allen terminated plaintiff's dealership. Plaintiff claims that Ethan Allen terminated its dealership in retaliation for plaintiff's discounting practice.

The trial court found that Ethan Allen terminated plaintiff to control the pricing of Ethan Allen products, and that such conduct violated section 3(3) of the Illinois Act. The trial court held that an apparent violation of section 3(3) was a *per se* violation of the Illinois Act. The appellate court reversed and remanded the cause for a new trial, finding that a market share analysis must be performed prior to finding a violation of section 3(3). A market share analysis consists of analyzing the relevant market to determine whether a defendant possesses sufficient monopoly power to injure competition. The appellate court believed that the ability of a defendant to injure competition was a necessary element of a violation of section 3(3) of the Illinois Act.

Plaintiff raises two issues for our review. First, plaintiff claims that an apparent violation of section 3(3) is a *per se* violation of the Illinois Act without showing that the defendant had the ability to injure competition. Plaintiff next claims that the trial court erred in failing to award attorney fees upon finding that defendant had violated section 3(3) of the Illinois Act.

## DISCUSSION

Ethan Allen does not contest the trial court's finding that it forced plaintiff from the marketplace to control the pricing of Ethan Allen products. The issue we must address is whether such conduct violates the Illinois Act (Ill. Rev. Stat. 1985, ch. 38, par. 60—1 *et seq.*).

Section 3 of the Illinois Act provides:

> "Every person shall be deemed to have committed a violation of this Act who shall:
>
> * * *
>
> (3) Establish, maintain, use, or attempt to acquire monopoly power over any substantial part of trade or commerce of this State for the purpose of excluding competition or of controlling, fixing, or maintaining prices in such trade or commerce." (Ill. Rev. Stat. 1985, ch. 38, par. 60—3(3).)

Ethan Allen claims that the language of section 3(3) of the Illinois Act is substantially similar to section 2 of the Sherman Anti-trust Act (the Sherman Act) (15 U.S.C. § 2 (1973)). Section 11 of the Illinois Act provides that when the wording of the Illinois Act is similar to the wording of a Federal antitrust law, the construction of the Federal law by the Federal courts shall be used as a guide in construing the Illinois Act. Ill. Rev. Stat. 1985, ch. 38, par. 60—11.

For reasons that will be discussed later in this opinion, the Federal courts have held that in determining whether there has been a violation of section 2 of the Sherman Act, a trial court must perform a market share analysis to determine whether the defendant

possessed monopoly power in the relevant market. (*Eastman Kodak Co. v. Image Technical Services, Inc.* (1992), 504 U.S. 451, 480-81, 119 L. Ed. 2d 265, 292-93, 112 S. Ct. 2072, 2089.) Section 2's market share analysis is more commonly known as the "rule of reason" analysis. In order to show a violation of the Sherman Act under the rule of reason analysis, the plaintiff must show that the defendant possessed sufficient monopoly power to inflict competitive injury in the relevant market. *International Distribution Centers, Inc. v. Walsh Trucking Co.* (1987), 812 F.2d 786, 791.

The appellate court found that section 3(3) was analogous to section 2 of the Sherman Act. Accordingly, the appellate court held that the trial court should have performed a rule of reason analysis pursuant to Federal precedent prior to finding a violation of section 3(3). Because the trial court failed to perform a rule of reason analysis, the appellate court reversed and remanded for a new trial. Plaintiff claims the appellate court erred in requiring a rule of reason analysis.

Initially, we note that if section 2 of the Sherman Act is similar to section 3(3) of the Illinois Act, Federal case law interpreting section 2 of the Sherman Act is merely a guide for Illinois courts to use in interpreting section 3(3). (Ill. Rev. Stat. 1985, ch. 38, par. 60—11.) The Federal decisions are not binding on our courts. (*People v. Crawford Distributing Co.* (1972), 53 Ill. 2d 332, 339.) With this principle in mind, we will consider the similarities between section 2 of the Sherman Act and section 3(3) of the Illinois Act.

Section 2 of the Sherman Act provides:

"Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor ***." 15 U.S.C. § 2 (1973).

Both section 3(3) of the Illinois Act and section 2 of the Sherman Act deal with monopolies, unfair trade practices, and the attempt to monopolize trade or commerce. The statutes do, however, have some significant differences. Because section 3(3) is an Illinois law, it does not pertain to interstate commerce; nor does section 3(3) pertain to conspiracy, as does section 2. Additionally, section 3(3) is narrower than section 2. In order to violate section 3(3), anticompetitive behavior must be accompanied by an improper purpose; section 2 has no such requirement.

Because section 3(3) of the Illinois Act and section 2 of the Sherman Act differ in significant respects, we cannot accept without question Federal case law interpreting section 2 as relevant to our interpretation of section 3(3). Instead, we must consider whether, given the differences between section 3(3) and section 2, the reasoning employed by the Federal courts in interpreting section 2 is relevant to our interpretation of section 3(3).

In *United States v. E.I. Du Pont de Nemours & Co.* (1956), 351 U.S. 377, 386 & n.7, 100 L. Ed. 1264, 1276 & n.7, 76 S. Ct. 994, 1002 & n.7, the Court explained that the "rule of reason" was based on the generality of sections 1 and 2 of the Sherman Act. Sections 1 and 2 were said to be "broad enough to embrace every conceivable contract or combination which could be made concerning commerce." (*E.I. Du Pont de Nemours & Co.*, 351 U.S. at 386 n.7, 100 L. Ed. at 1276 n.7, 76 S. Ct. at 1002 n.7.) A rule of reason standard, therefore, was necessary to curb the harsh results of literal application of the statute.

In contrast to the rule of reason standard, "*per se* rules are appropriate only for 'conduct that is manifestly anticompetitive,' [citation] that is, conduct ' "that would always or almost always tend to restrict competition

and decrease output," ' [citations]." (*Business Electronics Corp. v. Sharp Electronics Corp.* (1988), 485 U.S. 717, 723, 99 L. Ed. 2d 808, 816, 108 S. Ct. 1515, 1519.) "If a practice is within the per se category, all you have to prove to establish a violation is that the defendant engaged in the practice; you do not have to show that in fact the practice has had or will have an adverse effect on competition." *Marrese v. American Academy of Orthopaedic Surgeons* (1982), 692 F.2d 1083, 1093.

As noted above, section 3(3) of the Illinois Act is narrower than section 2 of the Sherman Act. Plaintiff asserts that the specificity of section 3(3) makes a rule of reason analysis unnecessary, and that an apparent violation of section 3(3) should be a *per se* violation of the Illinois Act.

We believe that interpreting an apparent violation of section 3(3) as a *per se* violation of the Illinois Act would render section 3(3) broader than the legislature intended. Manufacturers may attempt to control the ultimate resale prices of their products for reasons unrelated to competition. For instance, a manufacturer may desire that its products be part of a luxury niche. A discounting distributor could frustrate this purpose. Under these circumstances, the manufacturer might have an incentive to control the prices charged by the distributor. As long as the manufacturer was without market power, his price controls would not injure competition. The manufacturer's conduct, however, would be an apparent violation of section 3(3) because his purpose was to control prices. Interpreting an apparent violation of section 3(3) to be a *per se* violation of the Illinois Act, therefore, would render that section broad enough to encompass conduct that would not injure competition.

The majority of Illinois authorities supports imposition of a rule of reason requirement on section 3(3). The bar committee comments explain that sections 3(2) and

3(3) require examination of the competitive and economic consequences of the prohibited conduct. (740 ILCS Ann. 10/3, Bar Committee Comments—1967, at 16 (Smith-Hurd 1993).) Additionally, the "Historical and Practice Notes—1970" in Smith-Hurd Illinois Annotated Statutes indicate that section 3(3) requires consideration of the "relevant market." (Ill. Ann. Stat., ch. 38, par. 60—3, Historical & Practice Notes—1970, at 463 (Smith-Hurd 1977).) Finally, our appellate court has ruled that section 3(3) of the Illinois Act is analogous to section 2 of the Sherman Act and requires a market analysis. See *Ray Dancer, Inc. v. DMC Corp.* (1992), 230 Ill. App. 3d 40, 53 (a claim of attempted monopolization under section 3(3) of the Illinois Act requires a showing of "a dangerous probability of success"); *Maywood Sportservice, Inc. v. Maywood Park Trotting Association, Inc.* (1973), 14 Ill. App. 3d 141, 151 (section 3(3) requires proof of " 'a substantial lessening of competition in the relevant competitive market' "), quoting *Tampa Electric Co. v. Nashville Coal Co.* (1961), 365 U.S. 320, 333, 5 L. Ed. 2d 580, 590, 81 S. Ct. 623, 631; but see *MBL (USA) Corp. v. Diekman* (1985), 137 Ill. App. 3d 238, 244 (alleged violations of section 3(3) are "*per se* violations of the Illinois Antitrust Act").

Plaintiff asserts that imposing a rule of reason requirement on section 3(3) will render that section identical in application to section 3(2) of the Illinois Act. Plaintiff claims, therefore, that section 3(3) will be rendered unnecessary and superfluous. We disagree.

Section 3(2) deals with contracts, combinations or conspiracies in restraint of trade. (740 ILCS 10/3(2) (West 1992).) While there may be some overlap between sections 3(2) and 3(3), the instant case provides an excellent example of a case that would be treated differently under the two sections. Plaintiff here was unable to establish any contract, combination or conspir-

acy in violation of section 3(2). Although section 3(2) is not applicable, it is possible that after the trial court performs a rule of reason analysis on remand, Ethan Allen may be shown to have violated section 3(3). We find only that a rule of reason analysis should have been performed in determining whether there was a violation of section 3(3) of the Illinois Act, not whether Ethan Allen's conduct in terminating plaintiff was proper.

Finally, plaintiff claims that *Spray-Rite Service Corp. v. Monsanto Co.* (7th Cir. 1982), 684 F.2d 1226, supports use of a *per se* analysis here. The United States Supreme Court granted *certiorari* in *Monsanto,* and we will refer to the Supreme Court opinion rather than the appellate court opinion.

*Monsanto* deals with section 1 of the Sherman Act rather than section 2. We will consider *Monsanto,* however, because it involves a situation similar to that present here. In *Monsanto,* the plaintiff alleged that a manufacturer terminated plaintiff's distributorship as part of a scheme with other distributors to fix prices. *Monsanto Co. v. Spray-Rite Service Corp.* (1984), 465 U.S. 752, 79 L. Ed. 2d 775, 104 S. Ct. 1464.

The Court in *Monsanto* set out a two-part test to determine whether vertical price restraints constituted a *per se* violation of section 1. First, there must be a " 'contract, combination ... or conspiracy' " between the manufacturer and other distributors to maintain prices. (*Monsanto,* 465 U.S. at 761, 79 L. Ed. 2d at 783, 104 S. Ct. at 1469, quoting 15 U.S.C. § 1.) If such an agreement is proven, the plaintiff must then show that its termination was part of, or pursuant to, that agreement. *Monsanto,* 465 U.S. at 767, 79 L. Ed. 2d at 787, 104 S. Ct. at 1472.

In discussing what was necessary to constitute a "contract, combination or conspiracy," the Court stated that independent action by a manufacturer is not proscribed.

"[A] manufacturer can announce its resale prices in advance and refuse to deal with those who fail to comply. And a distributor is free to acquiesce in the manufacturer's demand in order to avoid termination.

\* \* \*

\*\*\* There must be evidence that tends to exclude the possibility that the manufacturer and nonterminated distributors were acting independently. \*\*\* [T]he antitrust plaintiff should present direct or circumstantial evidence that reasonably tends to prove that the manufacturer and others 'had a conscious commitment to a common scheme designed to achieve an unlawful objective.' [Citations.]" *Monsanto*, 465 U.S. at 761, 764, 79 L. Ed. 2d at 783-84, 785-86, 104 S. Ct. at 1469, 1471.

In the present case, plaintiff established nothing more at trial than independent action by Ethan Allen. In a case involving a similar fact pattern, a Federal district court found no violation of section 1 of the Sherman Act. (See *Empire Volkswagen v. World-Wide Volkswagen* (S.D.N.Y. 1986), 627 F. Supp. 1202, 1207, *aff'd* (2d Cir. 1987), 814 F.2d 90 ("Defendant's other alleged attempts to force plaintiff to stop discounting—including direct threats and decreasing [its product] allotment until it stopped discounting—also are merely unilateral actions, and fail to show any price-fixing agreement").) We reject plaintiff's contention, therefore, that *Monsanto* dictates use of a *per se* analysis for violations of section 3(3) of the Illinois Act.

We do not believe that the unilateral actions proscribed under section 3(3) of the Illinois Act, even coupled with improper motive, rise to the inherent level of anticompetitiveness necessary for a *per se* analysis. We believe that while section 3(3)'s language is narrower than that of section 2 of the Sherman Act, it is still broad enough to require use of a rule of reason analysis.

Because we find that the trial court should have used a rule of reason analysis rather than a *per se* analysis and we are remanding the matter for a new trial, the question of attorney fees is premature.

## CONCLUSION

We find that an apparent violation of section 3(3) is not a *per se* violation of the Illinois Act. The trial court, therefore, erred when it failed to perform a rule of reason analysis. We affirm the judgment of the appellate court.

*Affirmed.*